UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
WILLIS ALSTON, JR.,

               Plaintiff,

                                  <u>MEMORANDUM & ORDER</u>
     -against-                  14-CV-0244(JS)

CAROLYN W. COLVIN, Acting Commissioner
of Social Security,

               Defendant.
----------------------------------------X
APPEARANCES
For Plaintiff:       Rezwanul Islam, Esq.
                  Nassau/Suffolk Law Services
                    Committee, Inc.
                  1 Helen Keller Way, 5th Floor
                  Hempstead, NY 11550

For Defendant:       Robert W. Schumacher, II, Esq.
                  United States Attorney's Office
                  Eastern District Of New York
                  610 Federal Plaza
                  Central Islip, NY 11722

SEYBERT, District Judge:

        Plaintiff Willis Alston Jr. ("Plaintiff") brings this action pursuant to Section 405(g) of the Social Securities Act, 42 U.S.C. § 405(g), challenging the Commissioner of Social Security's (the "Commissioner") denial of his application for disability insurance benefits. Presently before the Court are Plaintiff's and the Commissioner's cross-motions for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). (Docket Entries 12, 15.) For the following reasons, the Commissioner's motion is GRANTED and Plaintiff's motion is DENIED.

BACKGROUND[1]

I.  Procedural Background

On April 14, 2011, Plaintiff filed for social security disability benefits, claiming disability since September 4, 2009. (R. 182.)  Plaintiff attributed his disability to human immunodeficiency virus ("HIV") and "hip and ankle problems." (R. 186.)  After his application was denied on June 27, 2011, (R. 46-49), Plaintiff requested a hearing before an administrative law judge, (R. 57).  A hearing took place on April 19, 2012 before Administrative Law Judge Seymour Rayner (the "ALJ"). (R. 26-45.) Plaintiff was represented by counsel at the hearing and was the only witness to testify. (R. 26-45.)

On May 15, 2012, the ALJ issued a decision finding that Plaintiff is not disabled. (R. 8-19.)  On June 13, 2012, Plaintiff sought review of the ALJ's decision by the Appeals Council. (R. 7.)  On November 20, 2013 the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (R. 1.)

Plaintiff then commenced this action on January 13, 2014.  The Commissioner and Plaintiff filed cross-motions for judgment on the pleadings on December 15, 2014 and February 18,

---

[1] The background is derived from the administrative record filed by the Commissioner on August 14, 2014. (Docket Entry 9.) "R." denotes the administrative record.

2015, respectively. (Docket Entries 12, 15.) The motions are fully briefed and are currently pending before the Court.

## II.  Evidence Presented to the ALJ

### A.  Testimonial Evidence

Plaintiff was born on June 3, 1965. He completed one year of college. (R. 187.) He currently resides in a hotel by himself. (R. 32, 163.)

From 1993 to 2006, Plaintiff worked as a sheet metal worker. (R. 173, 187.) Plaintiff testified that he suffered from swollen ankles and hip pain and would ignore the pain while working. (R. 35.) However, Plaintiff further testified that the reason he stopped working as a sheet metal worker was because "there [was not] enough work." (R. 33.)

From 2007 to 2009, Plaintiff worked as a school bus driver. (R. 173, 187.) When asked if he would take a bus-driving job if one opened, Plaintiff testified that he would not want to take the risks associated with HIV and the children's germs. (R. 35.) Plaintiff also worked as a warehouse worker from October 2008 to March 2009. (R. 173, 252.)

Plaintiff completed an Adult Function Report on December 20, 2010, (R. 163-170), stating that he had no problems with personal care and performed all household chores, including cleaning, laundry, and household repairs, (R. 164-66). His hobbies include reading, watching television, playing sports, and

listening to rap music. (R. 167.) He travels by public transportation or by walking. (R. 164-66.)

Plaintiff completed another Adult Function Report on May 24, 2011. (R. 194-202.) The report is generally consistent with the initial report, except with the added statements that he prepares meals for himself daily, (R. 196), and that he experiences swelling and pain in his ankle and hip when standing for more than two hours at a time or walking long distances, (R. 199-200). Plaintiff also stated that he shops for food and basic needs once or twice a week for one hour. (R. 198.)

At the administrative hearing, Plaintiff testified that he has not had any procedures for his hips or ankles, such as X-rays or MRIs, because it was "something [he] ignored" and "accepted." (R. 38-39.) He also testified that he does not walk with a cane because he does not "want [anyone] to know" about the pain. (R. 39.) He stated that fatigue has sometimes been a problem for him. (R. 40.) Plaintiff also testified that if he walks over a mile or two, he has to "have a seat for a second" before he continues. (R. 41.) He further stated that after working for a whole day he would "definitely [be] in pain" and would "definitely [be] stiff." (R. 41.) When asked what he has done to deal with the hip and ankle pain, Plaintiff replied that when he was employed, he would keep his leg up all night. (R. 43-44.) He stated that now, the need to elevate his leg has lessened

and the pain is not as extreme as it was when he was working because he is not constantly standing, moving, or lifting. (R. 44.) He testified that when he walks to the library and store, which is a distance of about five miles, he would feel the pain and have to "put [his leg] up for a second" to rest it. (R. 44.)

B. Medical Evidence

On August 9, 2009, Plaintiff visited the Nassau University Medical Center (the "NUMC"), complaining of fever, weakness, cough, and generalized aches and pains. (R. 281.) Plaintiff was diagnosed with "HIV/AIDS" four months earlier, but was not taking any medication. (R. 281.) Plaintiff was emaciated; he weighed 135 pounds, down from 250 pounds five years earlier. (R. 283.) According to the NUMC's physical examination notes, Plaintiff had oral thrush, mild joint swelling in his knees and elbows, an earache, a headache, dysphagia, and pneumonia. (R. 282-84.) He was prescribed Tylenol, Bactrim, Fluconazole, and Levaquin. (R. 284.)

On August 17, 2009, an X-ray of Plaintiff's chest revealed that his pneumonia resolved and that there was no evidence of acute pulmonary disease. (R. 336.) On August 21, 2009, Plaintiff stated that he was feeling better and wanted to be discharged. (R. 289.) Plaintiff was advised to start HIV medications, (R. 289), and was discharged that day, (R. 290).

Thereafter, Plaintiff regularly visited the NUMC for HIV care between September 21, 2009 and January 26, 2012. (See R. 300-13, 348-70, 394-99, 427-59.) According to the NUMC's treatment and progress notes, Plaintiff's HIV symptoms steadily improved his over this time. On September 21, 2009, Plaintiff was again diagnosed with oral thrush, and his weight loss was noted. (R. 394.) In the treatment notes for this visit, there is a notation "PCP??," which stands for pneumocystis pneumonia, but no definitive diagnosis. (R. 394.) By October 14, 2009, Plaintiff's oral thrush had resolved and his weight had risen to 146 pounds. (R. 310-11.) At the time, his CD4 count was seven and his viral load was 986,417.[2] (R. 310.) On December 9, 2009, Plaintiff's CD4 count rose to seventeen, and he weighed 189 pounds. (R. 308.) During the December 9th visit, Plaintiff reported numbness/tingling in his toes. (R. 308.)

_____

[2] A "CD4 cell" is a type of white blood cell that helps protect the human body from infection. When a person is infected with HIV, the virus attacks and destroys the CD4 cells. A "CD4 count" is a lab test that measures the number of CD4 cells in a sample of blood, and it indicates how well a person's immune system is working. A healthy immune system generally has a CD4 count between 500 and 1,800. A very low CD4 count (less than 200) is one of the ways to determine whether a person living with HIV has progressed to stage 3 infection of AIDS. "Viral load" refers to the amount of HIV in a sample of blood. https://www.aids.gov/hiv-aids-basics/just-diagnosed-with-hiv-aids/understand-your-test-results/cd4-count/index.html; https://www.aids.gov/hiv-aids-basics/just-diagnosed-with-hiv-aids/understand-your-test-results/viral-load/index.html.

On January 6, 2010, Plaintiff returned to the NUMC. (R. 312.) The notes for this visit contain a notation that one of Plaintiff's "active problems" was pneumocystis pneumonia ("PCP").[3] (R. 312.) However, the notes also state that Plaintiff's lungs were clear. (R. 312.) Plaintiff was treated with PCP prophylaxes.[4] (R. 312.) On May 5, 2010, Plaintiff reported a "dry cough," but his lungs were clear and he was gaining weight, weighing 203 pounds at the time. (R. 365-66.) By June 2, 2010, Plaintiff's CD4 count was 399 and his viral load was less than forty-eight.[5] (R. 363.) He again reported numbness/tingling in his feet. (R. 363.) By September 29, 2010, Plaintiff weighed 219 pounds, his CD4 count was 519, and his viral load still was less than forty-eight. (R. 359.) By December 8, 2010, Plaintiff's weight increased to 248 pounds. (R. 356.) By March 24, 2011, Plaintiff's weight increased to 257 pounds, and he began complaining about bilateral hip pain. (R. 352.)

---

[3] PCP is a form of pneumonia caused by the fungus Pneumocystis jirovecii. According to the Centers for Disease Control and Prevention, PCP "is one of the most frequent and severe opportunistic infections in people with weakened immune systems, particularly people with HIV/AIDS." http://www.cdc.gov/fungal/diseases/pneumocystis-pneumonia/.

[4] "Prophylaxis" is preventative treatment of a particular disease.

[5] In general, a viral load is considered "undetectable" if it is under forty to seventy-five. https://www.aids.gov/hiv-aids-basics/just-diagnosed-with-hiv-aids/understand-your-test-results/viral-load/.

Plaintiff indicated concern about asbestos exposure on April 4, 2011 and reported a cough. (R. 350.) An X-ray of Plaintiff's chest was taken the same day. (R. 336.) The X-ray revealed that Plaintiff's pneumonia in 2009 was "resolved" and that there was "[n]o evidence of acute pulmonary disease." (R. 336.) On May 11, 2011 Plaintiff reported numbness in his feet again. (R. 348.) On June 15, 2011, Plaintiff again reported numbness and a cough. (R. 430.) During this visit, Plaintiff reported right ankle pain aggravated by standing and walking. (R. 432.) On June 22, 2011 Plaintiff again reported the pain. (R. 434.) Advil was listed as an alleviating factor. (R. 434.) At a follow up visit on August 4, 2011, no pain was reported. (R. 437.) On October 27, 2011, Plaintiff reported left heel pain that had been present for five months. (R. 440.)

On January 4, 2011, Ammaji Manyam, M.D., examined Plaintiff for the Social Security Administration. (R. 314-17.) Dr. Manyam noted that Plaintiff had been HIV positive since 2009 and presently was not claiming any physical disabilities. (R. 314.) Plaintiff's medications included Norvir, Prezista, Bactrim, Azithromycin, and Truvada. (R. 314.) Plaintiff appeared to be in no acute distress. (R. 315.) Gait and stance were normal, squat full, and Plaintiff could walk on his heels and toes without difficulty. (R. 315.) Plaintiff did not need an assistive device or help changing for the exam or getting on and off the exam table.

(R. 315.) Plaintiff was also able to rise from the chair without difficulty. (R. 315.) Strength of five out of five was noted in the upper and lower extremities. (R. 316.) Dr. Manyam reported that Plaintiff had no limitations to physical activity. (R. 316.)

On June 21, 2011, Iqbal Teli, M.D., also examined Plaintiff for the Social Security Administration. (R. 382-384.) Dr. Teli noted that Plaintiff had been HIV positive since 2009 and that he complained of a mild cough. (R. 382.) Plaintiff appeared to be in no acute distress, gait and stance were normal, and squat was full. (R. 383.) Plaintiff could not walk on his heels and toes comfortably. (R. 383.) Plaintiff did not need help changing for the exam or getting on and off the exam table. (R. 383.) He was able to rise from the chair without difficulty. (R. 383.) Full range of motion of the hips, knees, and ankles was reported. (R. 383.) Joints were stable and not tender. (R. 384.) Strength was five out of five in the upper and lower extremities. (R. 384.) Dr. Teli opined that there was "no physical restriction at present." (R. 384.)

On June 27, 2011, "R. Anthony," a state disability examiner ("State Examiner Anthony"), completed a "Physical Residual Functional Capacity Assessment." (R. 385-90). Based on the evidence, State Examiner Anthony found that Plaintiff was capable of occasionally lifting and/or carrying fifty pounds and frequently lifting and/or carrying twenty-five pounds. (R. 386.)

He could stand and/or walk for six hours in an eight-hour day and
sit for six hours in an eight-hour day. (R. 386.) Plaintiff's
ability to push and/or pull was unlimited. (R. 386.) State
Examiner Anthony further found that Plaintiff had no postural,
manipulative, visual, communicative, or environmental limitations.
(R. 386-88.)

On June 30, 2011, Jean Jacques Pierre, M.P.A. ("P.A.
Pierre"), a physician's assistant and Plaintiff's medical case
manager at the NUMC, completed a "Medical Report on Adult with
Allegation of Human Immunodeficiency Virus (HIV) Infection." (R.
424-26.) Under the section titled "Opportunistic and Indicator
Diseases," Physician Assistant Pierre checked off the boxes for
"Pneumocystis Carinii Pneumonia or Extrapulmonary Pneumocystis
Carinii Infection," "HIV Wasting Syndrome,"[6] and "Diarrhea." (R.
424-25.) Physician Assistant Pierre stated that in a one-year
period in 2009, Plaintiff had three episodes of diarrhea lasting
one month each, one episode of PCP lasting two months, and one
episode of HIV wasting syndrome lasting six months. (R. 426.) At
the time Physician Assistant Pierre completed his report,

---

[6] The form Pierre completed defines HIV wasting syndrome as
"involuntary loss of 10 percent or more of baseline (or other
significant involuntary weight loss) and, in the absence of a
concurrent illness that could explain the findings, involving
chronic diarrhea with 2 or more loose stools daily lasting for 1
month or longer or chronic weakness and documented fever greater
than 38° C (I 00.4° F) for the majority of I month or longer."
(R. 425.)

Plaintiff's viral load was undetectable and he had a CD4 count of 551. (R. 426.) Physician Assistant Pierre also checked boxes for "marked restrictions of activities of daily living," "marked difficulties in maintaining social functioning," and "marked difficulties in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace." (R. 426.)

An August 8, 2011 X-ray of Plaintiff's right ankle revealed no evidence of an acute fracture or dislocation. (R. 402.) There were degenerative changes, specifically spurring of the superior and inferior aspects of the calcaneus and osteophytosis of the talus. (R. 402).

On February 21, 2012, Yulia Maystrovskaya, D.O., a doctor in the NUMC's physical rehabilitation department, completed a "Physiatric Evaluation" of Plaintiff. (R. 460.) Dr. Maystrovskaya noted that Plaintiff complained of chronic hip and right ankle pain that originated from falling down numerous times while playing football. (R. 460.) Plaintiff stated that he had bilateral hip surgery for pinning when he was fifteen. (R. 460.) He had a subsequent surgery to remove the pins placed during the first surgery. (R. 460.) Plaintiff further stated that since the surgery, he has had chronic pain, especially when working or standing for long periods of time. (R. 460.) Plaintiff rated the pain in his hips as five out of ten and the pain in his right ankle as eight out of ten. (R. 460.) Plaintiff reported rest as an

alleviating factor and walking and standing as aggravating factors. (R. 460.) Dr. Maystrovskaya's examination revealed no gross deformities of the hips or ankle. (R. 460.) There was mild tenderness on palpation over the right ankle and tenderness over the hips. (R. 460.) An X-ray revealed no evidence of fracture or dislocation. (R. 460.) There was spurring of the superior and inferior aspects of the calcaneus. (R. 460.)

On April 23, 2012, Alendra Sohal, M.D., a colleague of Dr. Maystrovskaya at the NUMC, completed a "Medical Source Statement of Ability to Do Work-Related Activities (Physical)." (R. 465-70.) Although Dr. Sohal did not actually perform an examination on Plaintiff, Dr. Sohal attested on Dr. Maystrovskaya's Physiatric Evaluation form that he "was present during the performance of key portion(s) of the service and was directly involved in the management of the patient and agree[d] with the findings and notes [on Dr. Maystrovskaya's form]." (R. 460.) Dr. Sohal opined that Plaintiff could continuously lift and carry up to ten pounds, continuously lift up to twenty pounds, frequently carry up to twenty pounds, frequently lift and carry up to fifty pounds, and occasionally lift and carry up to 100 pounds. (R. 465.) Dr. Sohal further concluded that Plaintiff could sit and stand for eight hours without interruption and walk for one hour without interruption. (R. 466.) The report also stated that Plaintiff could sit, stand, or walk for eight hours total in an

eight-hour workday. (R. 466.) Dr. Sohal concluded that Plaintiff could frequently use his right foot and continuously use his left foot to operate foot controls. (R. 467.) Dr. Sohal also noted that Plaintiff could continuously climb stairs and ramps, ladders or scaffolds, balance, stoop, kneel, crouch, and crawl. (R. 468.) In arriving at his conclusions, Dr. Sohal relied on Plaintiff's claims of pain and stiffness and X-rays taken on February 21, 2012. (R. 467, 462-63.) The X-rays revealed remodeling of bilateral femoral heads and necks with mild degenerative joint disease in the hips and plantar calcaneal spurring in the ankle. (R. 462-63.)

## DISCUSSION

### I. Standard of Review

In reviewing the ruling of an ALJ, the Court does not determine de novo whether Plaintiff is entitled to disability benefits. Thus, even if the Court may have reached a different decision, it must not substitute its own judgment for that of the ALJ. See Jones v. Sullivan, 949 F.2d 57, 59 (2d Cir. 1991). Instead, this Court must determine whether the ALJ's findings are supported by "substantial evidence in the record as a whole or are based on an erroneous legal standard." Curry v. Apfel, 209 F.3d 117, 122 (2d Cir. 2000) (internal quotations marks and citation omitted), superseded by statute on other grounds, 20 C.F.R. § 404.1560. If the Court finds that substantial evidence exists

13

to support the Commissioner's decision, the decision will be upheld, even if evidence to the contrary exists. See Johnson v. Barnhart, 269 F. Supp. 2d 82, 84 (E.D.N.Y. 2003).

"Substantial evidence is such evidence that a reasonable mind might accept as adequate to support a conclusion." Id. (citing Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)). The substantial evidence test applies not only to the ALJ's findings of fact, but also to any inferences and conclusions of law drawn from such facts. See id. To determine if substantial evidence exists to support the ALJ's findings, the Court must "examine the entire record, including contradictory evidence and evidence from which conflicting inferences may be drawn." See Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999) (internal quotation marks and citation omitted).

II. Determination of Disability

A claimant must be disabled within the meaning of the Social Security Act (the "Act") to receive disability benefits. See Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000); 42 U.S.C. § 423(a), (d). A claimant is disabled under the Act when he can show an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant's impairment must be of "such

severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Commissioner must apply a five-step analysis when determining whether a claimant is disabled as defined by the Act. See 20 C.F.R. §§ 404.1520, 416.920. First, the Commissioner considers whether the claimant is currently engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). Second, if the claimant is not, the Commissioner considers whether the claimant suffers from a "severe impairment that significantly limits his or her mental or physical ability to do basic work activities." 20 C.F.R. § 404.1520(a)(4)(ii). Third, if the impairment is "severe," the Commissioner must consider whether the impairment meets or equals any of the impairments listed in Appendix 1 of the Social Security regulations. 20 C.F.R. § 404.1520(a)(4)(iii). "These are impairments acknowledged by the Secretary to be of sufficient severity to preclude gainful employment. If a claimant's condition meets or equals the 'listed' impairments, he or she is conclusively presumed to be disabled and entitled to benefits." Dixon v. Shalala, 54 F.3d 1019, 1022 (2d Cir. 1995) (citation omitted). Fourth, if the impairment or its equivalent is not listed in the Appendix, the claimant must show that he does not have the residual functional capacity ("RFC") to perform tasks required in his

previous employment. 20 C.F.R. § 404.1520(a)(4)(iv). <u>Fifth</u>, if the claimant does not have the RFC to perform tasks in his or her previous employment, the Commissioner must determine if there is any other work within the national economy that the claimant is able to perform. 20 C.F.R. § 404.1520(a)(4)(v). If not, the claimant is disabled and entitled to benefits.

The claimant has the burden of proving the first four steps of the analysis, while the Commissioner carries the burden of proof for the last step. <u>See</u> <u>Shaw</u>, 221 F.3d at 132; <u>Poupore v. Astrue</u>, 566 F.3d 303, 306 (2d Cir. 2009). "In making the required determinations, the Commissioner must consider: (1) the objective medical facts; (2) the medical opinions of the examining or treating physicians; (3) the subjective evidence of the claimant's symptoms submitted by the claimant, his family, and others; and (4) the claimant's educational background, age, and work experience." <u>Boryk ex rel. Boryk v. Barnhart</u>, No. 02-CV-2465, 2003 WL 22170596, at *8 (E.D.N.Y. Sept. 17, 2003) (citing <u>Carroll v. Sec'y of Health & Human Servs.</u>, 705 F.2d 638, 642 (2d Cir. 1983)).

III. <u>The ALJ's Decision</u>

The ALJ applied the five-step analysis described above and determined that Plaintiff is not disabled. (R. 11-19.)

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 4, 2009. (R. 13.)

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: (1) HIV positive; (2) degenerative joint disease of the hips status post surgery; and (3) rights ankle problems. (R. 13.)

At step three, the ALJ concluded that Plaintiff's impairments, either singularly or in combination, did not meet or medically equal the severity of one of the impairments listed in Appendix 1 of the Social Security regulations. (R. 13.) In reaching this conclusion, the ALJ stated that he considered the listings of sections 1.00 (musculoskeletal) and 14.00 (immune system) in particular. (R. 13.)

At step four, the ALJ found that Plaintiff had the RFC to perform a full range of medium work as defined in 20 C.F.R. § 404.1567(b). (R. 13-18.) He specifically concluded that Plaintiff is "capable of sitting six hours, standing/walking six hours and lifting/carrying fifty pounds in an eight-hour workday." (R. 18.) As a result of the RFC analysis, the ALJ concluded that Plaintiff is capable of performing his past work as a school bus driver. (R. 18.) Because the ALJ determined that Plaintiff was able to perform past relevant work, he did not move on to step five. (R. 18.) He ruled that Plaintiff is not disabled under the Act, and denied his claim. (R. 18-19.)

In reaching his decision, the ALJ gave "little weight" to Physician Assistant Pierre's opinion because the "clinical HIV+

signs and symptoms resulting in marked limitations did not last
for twelve months from the date of onset." (R. 18.)  The ALJ gave
"some weight" to Dr. Sohal's opinion, stating that "although it is
not an acceptable medical source statement, his assessment with
regard to [Plaintiff's] ability to lift, carry, sit and stand is
supported by the objective medical evidence and consistent with
the other substantial reports." (R. 18.)  Lastly, the ALJ accorded
"great weight" to State Examiner Anthony's opinion because it was
"supported by the objective medical evidence and consistent with
other substantial reports." (R. 18.)

IV.  <u>Analysis of the ALJ's Decision</u>

      The Court must determine whether the ALJ's final
decision is supported by substantial evidence.  The parties have
cross-moved for judgment on the pleadings and have raised several
arguments in support of their respective motions.  The Commissioner
filed her motion first and argues that each step of the ALJ's
decision is supported by substantial evidence.  Plaintiff counters
that the ALJ's decision should be reversed and remanded on six
grounds: (1) the ALJ incorrectly concluded at step three of the
analysis that Plaintiff's HIV-related impairments did not meet any
of the listings in Appendix 1, (Pl.'s Br., Docket Entry 15, at 9-
12); (2) at step four, the ALJ failed to apply Social Security
Regulation 82-62, (Pl.'s Br. at 12-13); (3) the ALJ also erred at
step four when he failed to consider the impact of Plaintiff's

obesity on his RFC, (Pl.'s Br. at 13-15); (4) the ALJ failed to develop the record because he did not request an RFC assessment from Dr. Maystrovskaya, (Pl.'s Br. at 15-16); (5) the ALJ gave improper weight to Dr. Sohal's and State Examiner Anthony's opinions, (Pl.'s Br. at 16-18; (6) notwithstanding any misapplication of a legal standard, the ALJ's RFC assessment is not supported by substantial evidence, (Pl.'s Br. at 18-19). The Court addresses each argument below.

A.   HIV Listings

As noted, if a claimant's impairment meets a listing in Appendix 1, "he or she is conclusively presumed to be disabled and entitled to benefits." Dixon, 54 F.3d at 1022; accord Cichocki v. Astrue, 534 F. App'x 71, 74 (2d Cir. 2013) (citation omitted). Where, as in this case, an ALJ is faced with an HIV-related impairment, he or she "must evaluate the claimant's allegations under Listings 14.00 (immune system disorders) and 14.08 (HIV infection)." Milien v. Astrue, No. 10-CV-2447, 2010 WL 5232978, at *7 (E.D.N.Y. Dec. 16, 2010). Listing 14.08 sets forth an extensive list of HIV-related infections and conditions, each of which, if present, renders the claimant disabled under the Social Security regulations. Milien, 2010 WL 5232978, at *7.

At step three, the ALJ concluded that Plaintiff's "impairments [did] not meet or equal the requisite criteria for any section of the Listing of Impairments." (R. 13.) In reaching

this conclusion, the ALJ stated that he considered "sections 1.00 (musculoskeletal system) and 14.00 (immune system)" of Appendix 1 "in particular." (R. 13.) Plaintiff argues that the ALJ erred in reaching this conclusion because the medical evidence establishes that Plaintiff met the requirements of Listing 14.08H (wasting syndrome) and Listing 14.08B7 (PCP). (Pl.'s Br. at 9-12.) The Court disagrees.

To meet Listing 14.08H, a claimant must establish that he or she has HIV and

> HIV wasting syndrome, characterized by involuntary weight loss of 10 percent or more of baseline (computed based on pounds, kilograms, or body mass index (BMI)) or other significant involuntary weight loss as described in 14.00F5, and in the absence of a concurrent illness that could explain the findings. With either:
>
> 1. Chronic diarrhea with two or more loose stools daily lasting for 1 month or longer; or
>
> 2. Chronic weakness and documented fever greater than 38°C (100.4°F) for the majority of 1 month or longer.

20 C.F.R. pt. 404, subpt. P, app. 1 § 14.08H. To meet Listing 14.08B7, a claimant must establish that he or she has HIV and PCP. Id. § 14.08B7. As previously noted, PCP is a type of pneumonia cause by a fungal infection, as opposed to a bacterial infection.

Section 14.00F of Appendix 1 requires documentation of both the HIV infection and "the manifestations of HIV infection,"

that is, in this case, PCP and wasting syndrome. Id. § 14.00F. Under the regulations, "[d]ocumentation may be by laboratory evidence or by other generally acceptable methods consistent with the prevailing state of medical knowledge and clinical practice." Id. § 14.00F3. "Laboratory evidence," which is referred to "definitive documentation" by the regulations, includes a "culture, serologic test, or microscopic examination of biopsied tissue or other material (for example, bronchial washings)." Id. § 14.00F3a. Manifestations of HIV infection may also be documented without definitive laboratory evidence, "provided that such documentation is consistent with the prevailing state of medical knowledge and clinical practice and is consistent with the other evidence in [the claimant's] case record." Id. § 14.00F3b. Furthermore, with respect to PCP, the regulations provide that PCP may be "diagnosed presumptively" with "supportive evidence," including "[f]ever, dyspnea, hypoxia, CD4 count below 200, . . . no evidence of bacterial pneumonia[,] . . . bilateral lung interstitial infiltrates on x-ray, a typical pattern on CAT scan, . . . a gallium scan positive for pulmonary uptake[,] . . . [and] [r]esponse to anti-PCP therapy." Id. § 14.00F3a.

Plaintiff points to Physician Assistant Pierre's 2011 "Medical Report" as evidence that Plaintiff was diagnosed with PCP and wasting syndrome. (Pl.'s Br. at 11.) However, as Plaintiff

concedes, Physician Assistant Pierre's report is based solely on Plaintiff's treatment records from the NUMC in 2009. With respect to wasting syndrome, although the treatment notes clearly document a significant amount of weight loss, there is no evidence of "[c]hronic diarrhea with two or more loose stools daily lasting for 1 month or longer," or "[c]hronic weakness and documented fever greater than 38°C (100.4°F) for the majority of 1 month or longer." 20 C.F.R. pt. 404, subpt. P, app. 1 § 14.08H. Thus, Plaintiff's medical records do not establish or document that he had or was diagnosed with wasting syndrome. With respect to PCP, the treatment notes suggest that Plaintiff may have had PCP in late 2009 and/or early 2010, but still, the records stop short of a definitive diagnosis. For example, treatment notes for Plaintiff's first visit to the NUMC in August 2009 state that Plaintiff had pneumonia, not PCP. (R. 284.) In the treatment notes for his September 2009 visit, there is a notation, "PCP??," questioning whether Plaintiff had PCP, but no definitive diagnosis. (R. 394.) And although the treatment notes for Plaintiff's January 2010 visit contain a notation that PCP was one of Plaintiff's "active problems," the same notes also state that his lungs were clear. (R. 312.)

In any event, whether Plaintiff had PCP or wasting syndrome in 2009 is beside the point. Even if Plaintiff's condition met a listed impairment in 2009 and 2010, to qualify for

benefits, Plaintiff must establish that he was disabled <u>after</u> he filed his application for benefits, which was on April 14, 2011. <u>See</u> 20 C.F.R. § 416.335 ("When you file an application in the month that you meet all the other requirements for eligibility, the earliest month for which we can pay you benefits is the month following the month you filed the application."); <u>Payne v. Astrue</u>, No. 11-CV-0322, 2013 WL 550677, at *3 (N.D.N.Y. Feb. 12, 2013) (stating that "for purposes of SSI, [the plaintiff] must establish disability [after] . . . her protective filing date . . . the date of the ALJ decision"). While there may be some evidence suggesting PCP or wasting syndrome in late 2009 and early 2010 (over a year prior to Plaintiff's application date), there is no question that Plaintiff has failed to identify any evidence demonstrating that he had wasting syndrome or PCP after his application date. In fact, the medical records unequivocally show that Plaintiff's HIV drastically improved after his initial visit in August 2009 and that Plaintiff was clinically stable months before he filed his application. As of June 2, 2010, Plaintiff's CD4 count had risen to 399, and by September 2010, it was 519. By the end of 2010, Plaintiff's weight had increased to 248 pounds. Plaintiff was entirely asymptomatic and he made no complaints specifically related to HIV. Additionally, the X-ray of Plaintiff's lungs taken on April 4, 2011, a mere ten days before Plaintiff's application date, revealed that Plaintiff's pneumonia in 2009 was "resolved"

and that there was "[n]o evidence of acute pulmonary disease."
(R. 336.) Thus, there is no evidence that Plaintiff had PCP or
wasting syndrome during the relevant disability period.

Nonetheless, Plaintiff argues that the ALJ's decision
must be remanded because he misapplied Social Security Regulation
93-2p. (Pl.'s Br. at 9-10.) The Court disagrees. Under the
Social Security regulations, an impairment that meets a listing
"must have lasted or must be expected to last for a continuous
period of at least 12 months" for the claimant to be disabled. 20
C.F.R. § 416.909. However, Social Security Regulation 93-2p
provides that there is no durational requirement for HIV cases
that meet the requirements of Listing 14.08:

> With documentation of HIV infection as
> described in 14.00D3 or 114.00D3 of the
> preface to the Immune System listings, an
> individual who has an impairment that meets or
> equals one of the listed criteria required in
> listing 14.08 or 114.08 (the HIV listings) has
> an impairment that is considered permanent or
> expected to result in death. Accordingly, if
> an individual has an HIV infection of this
> severity, a separate finding on the duration
> of the impairment is not required, and the
> evidence required under sections 404.1525(a)
> and 416.925(a) of the regulations showing that
> the impairment has lasted or is expected to
> last for a continuous period of at least 12
> months is not necessary.

SSR 93-2p, 1993 WL 409835 (Oct. 13, 1993); see also Hoang v.
Astrue, No. 09-CV-0896, 2010 WL 1780244, at *4 (W.D. Wash. Apr. 2,
2010), adopted by, 2010 WL 1780803 (W.D. Wash. Apr. 30, 2010). In

his decision, the ALJ stated that he gave little weight to Physician Assistant Pierre's Medical Report "because the clinical HIV+ signs and symptoms . . . did not last for twelve months from the date of onset." (R. 18.) To the extent that the ALJ rejected Plaintiff's HIV symptoms based on the twelve-month durational requirement, this was an error. Nevertheless, it was harmless, since the medical record is devoid of any evidence that Plaintiff met a listing during the relevant disability period anyway. Zabala v. Astrue, 595 F.3d 402, 409 (2d Cir. 2010) ("[W]here application of the correct legal principles to the record could lead [only to the same] conclusion, there is no need to require agency reconsideration." (alterations in original) (quoting Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987)). Thus, remand is not required based on the ALJ's misapplication of SSR 93-2P.

In sum, Plaintiff has failed to produce any evidence that he had PCP or wasting syndrome during the relevant disability period. Rather, the medical record unequivocally demonstrates that he did not. Plaintiff therefore has failed to meet his step three burden that his HIV condition met the requirements of a listing in Appendix 1. Accordingly, the ALJ's conclusion at step three is supported by substantial evidence. See Chiles v. Colvin, No. 12-CV-3516, 2014 WL 630888, at *11 (N.D. Tex. Feb. 18, 2014) (holding that substantial evidence supported the ALJ's conclusion that the plaintiff's HIV infection did not meet the requirements

of Listing 14.08B7 where the plaintiff was diagnosed with PCP before he filed his application for disability benefits but "failed to identify evidence in the record showing he had PCP" <u>after</u> he filed his application for disability benefits).

    B.   <u>Developing the Record</u>

       Plaintiff also argues that remand is required because the ALJ failed to develop the administrative record. Plaintiff specifically faults the ALJ for not obtaining an RFC assessment from Dr. Maystrovskaya, who was one of Plaintiff's treating physicians. (Pl.'s Br. at 15-16.) The Court disagrees with Plaintiff.

> Medical reports should include . . . [a] statement about what [the claimant] can still do despite [his or her] impairment(s) . . . . Although [the Social Security Administration] will request a medical source statement about what [the claimant] can still do despite [his or her] impairment(s), the lack of the medical source statement will not make the report incomplete.

20 C.F.R. §§ 404.1513(b)(6), 416.913(b)(6). Here, the record does not indicate whether the ALJ requested an RFC assessment from Dr. Maystrovskaya, who examined Plaintiff in connection with his hip and ankle problems.

       Nonetheless, an ALJ's failure to request an RFC assessment from a treating physician does not automatically require remand. As the Second Circuit has explained, although the

regulation "seems to impose on the ALJ a duty to solicit such medical opinions," the text of the regulation "suggest[s] [that] remand is not always required when an ALJ fails in his duty to request opinions, particularly where . . . the record contains sufficient evidence from which an ALJ can assess the petitioner's residual functional capacity." Tankisi v. Comm'r of Soc. Sec., 521 F. App'x 29, 33-34 (2d Cir. 2013); see also Barrett v. Comm'r of Soc. Sec., No. 13-CV-0876, 2015 WL 4509671, at *17 (E.D.N.Y. July 24, 2015) (internal quotation marks and citation omitted) (stating that an ALJ "has an affirmative duty to investigate facts and develop the record where necessary to adequately assess the basis for granting or denying benefits." (emphasis added)); Rosa v. Callahan, 168 F.3d 72, 79 n.5 (2d Cir. 1999). ("[W]here the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." (citation omitted)). In Tankiski, the Second Circuit held that the ALJ's failure to request medical opinions assessing the claimant's RFC was not fatal because the record was "quite extensive" and also included an assessment of the claimant's limitations from at least one treating physician. Tankisi, 521 F. App'x at 34.

Here, the Court finds that the record was adequate to permit the ALJ to assess Plaintiff's RFC. As described above, the record in this case is extensive and it includes an RFC assessment

from Plaintiff's treating physiatrist, Dr. Sohal, who is Dr. Maystrovskaya's colleague at the NUMC. As previously noted, although Dr. Sohal did not personally examine Plaintiff, he was present during Dr. Maystrovskaya's evaluation and agreed with Dr. Maystrovskaya's findings. (R. 460.) Accordingly, the Court finds that Dr. Sohal's opinion, as well as the extensive record in this case, were sufficient for the ALJ to assess Plaintiff's RFC. The ALJ'S failure to obtain an RFC assessment from Dr. Maystrovskaya therefore does not require remand.

C.    Weight Accorded to Medical Opinion Evidence

Plaintiff also argues that remand is required because the ALJ accorded improper weight to the opinions of Dr. Sohal and State Examiner Anthony. (Pl.'s Br. at 16-17.) The Court disagrees.

In finding that Plaintiff had the RFC to perform a full range of medium work, the ALJ assigned "some weight" to Dr. Sohal's Medical Source Statement. Plaintiff takes issue with the ALJ's reliance on Dr. Sohal's opinion because, as noted, Dr. Sohal did not actually personally examine Plaintiff. However, aside from the fact that Dr. Sohal was present during Dr. Maystrovskaya's examination of Plaintiff, assigning weight to a non-examining physician's opinion does not, by itself, constitute error. Indeed, the regulations permit reliance on non-examining opinions. See, e.g., 20 C.F.R. § 404.1527(c)(1) ("Generally, we give more weight

to the opinion of a source who has examined you than to the opinion of a source who has not examined you."). Here, Dr. Sohal's opinion is consistent with the record as a whole. Thus, the ALJ did not err when he assigned some weight to Dr. Sohal's opinion. Cf. Stewart v. Comm'r of Soc. Sec., No. 12-CV-3121, 2014 WL 2998530, at *1 (S.D.N.Y. July 2, 2014) (finding error because the ALJ "fail[ed] to properly justify th[e] decision and instead place[d] great weight on the assessments of non-treating physicians given the totality of the evidence in the administrative record" (internal quotation marks and citation omitted)); Minsky v. Apfel, 65 F. Supp. 2d 124, 139 (E.D.N.Y. 1999) (finding error in ALJ's reliance on the testimony of non-examining physicians over that of treating physicians).

With respect to State Examiner Anthony's opinion, Plaintiff is correct that is improper for the ALJ "treat 'a [state] disability analyst as a doctor.'" Tankisi, 521 F. App'x at 34-35 (quoting Castano v. Astrue, 650 F. Supp. 2d 270, 281 (E.D.N.Y. 2009)). However, where the record supports the medical assertions in a disability analyst's report, an ALJ's improper reliance on such an opinion does not require remand. Tankisi, 521 F. App'x at 35 (stating that even though the ALJ improperly treated the state disability examiner as a doctor, remand was not required because "the medical assertions in [the state disability examiner's] report were supported by the remainder of the record"); Buschle v. Astrue,

29

No. 10-CV-1535 GLS, 2012 WL 463443, at *3 (N.D.N.Y. Feb. 13, 2012)
("Where an ALJ errs by improperly relying on such an opinion, yet
other competent medical evidence regarding the claimant's RFC is
present in the record, the error does not require remand.").  Here,
even if the ALJ improperly weighed State Examiner Anthony's RFC
assessment, any such error was harmless, because the RFC assessment
is supported by the record as a whole and other substantial reports
from doctors Sohal, Manyam, and Teli.

    In sum, the ALJ did not err by assigning some weight to
Dr. Sohal's opinion even though he technically is a non-examining
source, and any error committed in evaluating State Examiner
Anthony's report does not require remand.

    D.    Plaintiff's Obesity

    Plaintiff further contends that the ALJ erred when he
failed to consider plaintiff's obesity in making the RFC
determination.  (Pl.'s Br. at 13-15.)  The Court again disagrees
with Plaintiff.

    Under Social Security Regulation 02-1p, "[o]besity is
not in and of itself a 'disability,' but the Social Security
Administration considers it to be a medically determinable
impairment, the effects of which should be considered at the
various steps of the evaluation process, including steps three and
four."  Polynice v. Colvin, No. 12-CV-1381, 2013 WL 6086650, at *6
(N.D.N.Y. Nov. 19, 2013) (citing SSR 02-1p, 2002 WL 31026506

(Sept. 12, 2002)), aff'd, 576 F. App'x 28 (2d Cir. 2014).
Furthermore, Appendix 1 of the regulations states: "[W]hen
determining whether an individual with obesity has a listing-level
impairment or combination of impairments, and when assessing a
claim at other steps of the sequential evaluation process,
including when assessing an individual's residual functional
capacity, adjudicators must consider any additional and cumulative
effects of obesity." 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 1.00Q.

      Notwithstanding SSR02-1p, however, "there is no
obligation on an ALJ to single out a claimant's obesity for
discussion in all cases." Cruz v. Barnhart, No. 04-CV-9011, 2006
WL 1228581, at *9 (S.D.N.Y. May 8, 2006). For example, in Mancuso
v. Astrue, 361 F. App'x 176, 178 (2d Cir. 2010), the Second Circuit
upheld an ALJ's decision that did not address the claimant's
obesity because the "medical reports referencing [the claimant's]
weight failed to identify limitations therefrom, and . . . no
limitations sufficient to preclude light work were identified upon
physical examination of [the claimant's] overall condition."). In
other words, even if a claimant is obese, if the medical record
and doctor's opinions do not identify obesity as a disabling
impairment or contributing to any other impairment, there is no
factual basis for the ALJ consider obesity. Other district courts
in this Circuit have reached similar conclusions. See Daragjati
v. Colvin, No. 14-CV-2727, 2015 WL 427944, at *5 (E.D.N.Y. Jan.

31, 2015) ("There could be no basis for [the ALJ] to reach such a conclusion if no doctor has so opined, or at least suggested that obesity was an aggravating factor."); Sokolowski v. Comm'r of Soc. Sec., No. 13-CV-0744, 2014 WL 2532485, at *4 (N.D.N.Y. June 5, 2014) ("[W]hen an ALJ's decision adopts the physical limitations suggested by reviewing doctors after examining the [claimant], the claimant's obesity is understood to have been factored into their decisions." (second alteration in original) (quoting Yablonski v. Comm'r of Soc. Sec., No. 03-CV-0414, 2008 WL 2157129, at *6 (N.D.N.Y. Jan. 31, 2008))).

Here, although Plaintiff is obese, no report indicated that this obesity has any limiting effect on Plaintiff's daily activities, nor does Plaintiff articulate any limitations brought on by his obesity. Simply put, there is no factual basis for the ALJ to consider whether obesity was a disabling impairment or had an effect on Plaintiff's ankle and hip problems.[7]

---

[7] The Court recognizes that it has remanded an ALJ's decision for failure to consider the impact of obesity on a claimant's impairment. See Carlsen v. Colvin, No. 13-CV-1164, 2014 WL 4536728 (E.D.N.Y. Sept. 11, 2014). However, Carlsen is distinguishable from the present case because the plaintiff's treating physician noted severe pain and limitations on plaintiff's daily activities. Here, the record is devoid of any such indications. Additionally, throughout his testimony, the plaintiff in Carlsen articulated limitations on his daily activities. Here, plaintiff offers no evidence of how his obesity limits his daily activities other than having to stop and rest after walking over a mile or two because of his ankle pain. (R. 41.)

E.    Social Security Regulation 82-62

Plaintiff also argues that remand is required because the ALJ failed to apply Social Security Regulation 82-62 at step four of his analysis. (Pl.'s Br. at 12.)  The Court disagrees.

As noted, claimant is disabled under the Act when he can show an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(A).  The claimant's impairment must be of "such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

SSR 82-62 provides that, for purposes of this determination, "work performed 15 years or more prior to the time of adjudication of the claim . . . is ordinarily not considered relevant." SSR 82-62, 1982 WL 31386, at *1 (1982). The regulation further provides that "[i]f more than one job was performed during the 15-year period, separate descriptions of each job will be secured." Id. at *3.

At step four, the ALJ found that Plaintiff had the RFC to perform a full range of medium work as defined in 20 C.F.R. § 404.1567(b). (R. 13-18.)  As a result of the RFC analysis, the ALJ concluded that Plaintiff is capable of performing his past work as a school bus driver.  (R. 18.)  The ALJ did not address

33

whether Plaintiff is capable of performing his past work as a sheet metal worker and warehouse worker. Plaintiff argues that this violated SSR 82-62 and requires remand. However, even if the ALJ concluded that Plaintiff is not capable of working as a sheet metal worker or warehouse worker, Plaintiff has not explained how that would change the ALJ's determination that Plaintiff is capable of performing his past work as a bus driver. Accordingly, to the extent that the ALJ violated SSR 82-62 by failing to assess whether Plaintiff is able to work as a sheet metal worker or warehouse worker, any such error is harmless and does not require remand.

F. <u>Whether the ALJ's Step Four Analysis is Supported by Substantial Evidence</u>

Finally, Plaintiff argues that notwithstanding any misapplication of a legal standard, the ALJ's RFC assessment at step 4 is not supported by substantial evidence. (Pl.'s Br. at 18-19.) The Court disagrees.

Under the regulations, RFC is defined as "the most [the claimant] can still do despite [his or her] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). "To determine a claimant's RFC, the ALJ 'must consider objective medical facts, diagnoses and medical opinions based on such facts, and subjective evidence of pain or disability testified to by the claimant or others.'" <u>Credle v. Astrue</u>, No. 10-CV-5624, 2012 WL 4174889, at *15 (E.D.N.Y.

Sept. 19, 2012) (quoting <u>Pluck v. Astrue</u>, No. 10-CV-2042, 2011 WL 917654, at *22 (E.D.N.Y. Mar. 9, 2011)).

Here, after reviewing the entire record, the ALJ concluded that Plaintiff had the RFC to perform a full range of medium work. (R. 13-18.) In reaching this conclusion, the ALJ extensively discussed the medical records pertaining to Plaintiff's HIV and hip and ankle problems. The ALJ concluded that by 2011, Plaintiff's HIV condition was essentially clinically stable with medication. (<u>See</u> R. 15-16.) The medical record supports this. With respect to Plaintiff's hip and ankle problems, the ALJ determined that while there were some symptoms of pain and discomfort, they were not so severe to preclude all substantial gainful activity. (<u>See</u> R. 16-17.) The ALJ then considered and weighed all of the medical opinions in the record. The ALJ's detailed decision demonstrates that he fully considered all of the evidence in the record, and based on Plaintiff's physical signs and symptoms, determined that Plaintiff still had the RFC to perform a full range of medium work. Because his conclusion is reasonable and based upon a thorough review of the record, the Court finds that the ALJ's RFC determination is supported by substantial evidence. <u>See</u> <u>Dumas v. Schweiker</u>, 712 F.2d 1545, 1551, 1553 (2d Cir. 1983) (finding that the ALJ's determination was supported by substantial evidence where the decision "reflect[ed]

a complete and detailed recitation of the medical records and reports."

CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Docket Entry 12) is GRANTED and Plaintiff's motion for judgment on the pleadings (Docket Entry 15) is DENIED. The Clerk of the Court is DIRECTED to enter judgment accordingly and mark this matter CLOSED.

SO ORDERED

/S/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:     September _3_, 2015
           Central Islip, NY